UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHON DAROSA,<br><br>        Petitioner,<br><br>   v.<br><br>F. FOULK, et al.,<br><br>        Respondents. | No. 2: 14-cv-2287 KJN P<br><br><br><br>ORDER |

I. Introduction

     Petitioner is a state prisoner, proceeding without counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2011 conviction for possession of heroin for sale (Cal. Health & Saf. Code § 11351) (count one), possession of oxycodone for sale (Cal. Health & Saf. Code § 11351) (count two), possession of hydrocodone for sale (Cal. Health and Saf. Code § 11351) (count three), possession of buprenorphine for sale (Cal. Health and Safety Code § 113780) (count 4), possession of alprazolam for sale (Cal. Health and Saf. Code § 11375(b)) (count five), possession of cocaine (Cal. Health and Saf. Code § 11350(a)) (count six), felon in possession of a firearm (Cal. Penal Code § 12021(a)(1)) (counts seven and eight), and felon in possession of ammunition (Cal. Penal Code § 1231(b)(1)) (count nine). (Court Reporter's Transcript ("CT") at 580-84.)

////

With respect to counts one, two, three, four and five, it was also alleged that petitioner was armed during the commission of the offense. (Cal. Penal Code § 12022(c)). (CT at 580-84.) It was further alleged that petitioner had suffered a prior conviction. (Cal. Penal Code §§ 1192.7(c), 667 (b)-(i).)

Petitioner is serving a sentence of seventeen years and eight months. (ECF No. 1 at 2.)

This action proceeds on the original petition. (Id. 1.) Petitioner raises the following claims: 1) ineffective assistance of appellate counsel; 2) identity of confidential informants should have been disclosed to petitioner; and 3) third person culpability evidence should not have been excluded from trial.

The parties have consented to the jurisdiction of the undersigned. (ECF Nos. 7, 8.) After carefully considering the record, the undersigned denies the petition for the reasons stated herein.

II. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537

2

1  U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

2  Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court
3  may grant the writ if the state court identifies the correct governing legal principle from the
4  Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's
5  case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because
6  that court concludes in its independent judgment that the relevant state-court decision applied
7  clearly established federal law erroneously or incorrectly. Rather, that application must also be
8  unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough
9  that a federal habeas court, in its independent review of the legal question, is left with a 'firm
10 conviction' that the state court was 'erroneous.'") (internal citations omitted). "A state court's
11 determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded
12 jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter,
13 131 S. Ct. 770, 786 (2011).

14 The court looks to the last reasoned state court decision as the basis for the state court
15 judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). If there is no reasoned decision,
16 "and the state court has denied relief, it may be presumed that the state court adjudicated the
17 claim on the merits in the absence of any indication or state-law procedural principles to the
18 contrary." Harrington, 131 S. Ct. at 784-85. That presumption may be overcome by a showing
19 that "there is reason to think some other explanation for the state court's decision is more likely."
20 Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

21 "When a state court rejects a federal claim without expressly addressing that claim, a
22 federal habeas court must presume that the federal claim was adjudicated on the merits – but that
23 presumption can in some limited circumstances be rebutted." Johnson v. Williams, 133 S. Ct.
24 1088, 1096 (Feb. 20, 2013). "When the evidence leads very clearly to the conclusion that a
25 federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de
26 novo review of the claim. Id., at 1097.

27 Where the state court reaches a decision on the merits but provides no reasoning to
28 support its conclusion, the federal court conducts an independent review of the record.

3

"Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct. at 784. "[A] habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

III. Factual Background

The opinion of the California Court of Appeal contains a factual summary. After independently reviewing the record, the undersigned finds this summary to be accurate and adopts it herein.

> Defendant does not challenge the sufficiency of the evidence to support his convictions, nor do we need to assess prejudice from any error. We therefore limit our factual account to an overview of the significant facts.
>
> In early February 2011, defendant was the subject of a traffic stop for excessive acceleration. He said he had just purchased the car (a Pontiac Grand Prix), so the registration was listed under another name. His driver's license indicated an address on Ahrentzen Court in Citrus Heights. At some point, someone added an address on Tangors Way to the computer record of the officer's report on the stop; the officer did not obtain it herself. Defendant's girlfriend (now wife) was in fact the registered owner of the car. She was also the owner of the Tangors Way residence, where she lived with roommates.
>
> Detective Daniel Heffner subsequently drove past the Tangors Way address and saw the car parked in the driveway. (The parties do not direct us to any testimony explaining the manner in which defendant came to the detective's attention.) On February 15, he had defendant under surveillance. The latter was doing something under the hood of the car in the driveway. When a second detective arrived after Heffner summoned him, who detained defendant and a companion, Heffner effected a probation search of the Tangors Way residence; defendant told him the door key was on a ring in the car's ignition. Heffner also retrieved a safe key from defendant's pocket.
>
> Detective Heffner went to the front door, accompanied by other

> officers. The key fit, but the front door was unlocked. No one else was present. Inside the residence, the officers forced open the locked door to the master bedroom. (They later found that a key on defendant's ring was for the bedroom door.) They found a floor safe in the closet, which had a keyhole in the combination dial. The key from defendant unlocked the dial, but the officers needed to pry open the safe because the combination was unknown. Inside the safe were a large amount of cash in a locked box (which the officers were able to open with yet another key on defendant's ring), two guns, ammunition, and the various controlled substances that were the bases for defendant's possession convictions. Defendant's fingerprints were on two containers. There was also a bail receipt and a passport in defendant's name. The fingerprints of defendant's wife were on one of the two containers, and the fingerprints of a friend of defendant were on the ammunition box (though the friend denied having any access to the safe; he asserted he must have touched it when it was on defendant's desk when the friend was using the computer). A search of defendant's person found a baggie of heroin, which had a picture of an eight ball on it matching baggies found in the master bedroom.
>
> Defendant did not testify. The defense rested without calling any witnesses. Defense counsel argued that the roommates of defendant's wife had access to the bedroom and safe and were more likely to have been selling the contraband than defendant (who did not live there), raising a reasonable doubt of defendant's guilt.

(Respondent's Lodged Document 1 at 2-4.)

IV. Alleged Ineffective Assistance of Appellate Counsel

The Sacramento Superior Court was the last state court to issue a reasoned opinion addressing petitioner's ineffective assistance of appellate counsel claim. Accordingly, the undersigned considers whether the Superior Court's denial of this claim was an unreasonable application of clearly established Supreme Court authority. 28 U.S.C. § 2254(d).

A. Legal Standard

In order to be successful on a claim for ineffective assistance of appellate counsel, petitioner must show: 1) counsel unreasonably failed to raise a non-frivolous issue; and 2) had counsel presented the issue, there is a reasonable probability that relief would have been granted. Smith v. Robbins, 528 U.S. 259, 285 (2000).

B. Discussion

Petitioner argues that his appellate counsel was ineffective for failing to raise a claim challenging the search that led to his arrest. The background to this claim is summarized as

5

1    follows.

2           Petitioner's trial counsel filed a motion to suppress the evidence seized from the Tangors
3    Way residence on grounds that the officers who conducted the search did not have probable cause
4    to believe that petitioner lived at that address. (CT at 21-34.) In this motion, trial counsel
5    admitted that petitioner was on searchable probation, meaning that he consented to warrantless
6    searches of his person and property, but argued that the officers did not have probable cause to
7    believe that petitioner lived at the Tangors Way residence. (Id. at 30.) In opposition, the
8    prosecutor argued that just prior to the search, petitioner told law enforcement officials that he did
9    not stay at the Tangors Way residence. (Id. at 45.) The prosecutor argued that because petitioner
10   disclaimed any interest in the house, he waived any expectation of privacy and, thus, lacked
11   standing to raise a Fourth Amendment claim challenging the search. (Id.) The prosecutor also
12   argued, alternatively, that the search was valid because the officers had probable cause to believe
13   that petitioner resided at the Tangors Way residence and that petitioner was on searchable
14   probation. (Id. at 45-56.)

15          At the hearing on the motion to suppress, as noted by respondent in the answer,
16   petitioner's counsel argued both that petitioner did not reside at the Tangors Way residence *and*
17   that officers lacked probable cause to believe that he did reside there. (Id. at 179-81.) The trial
18   court denied the motion to dismiss on grounds that petitioner lacked standing to challenge the
19   search because he disavowed any interest in the Tangors Way residence. (Id. at 181.)

20          Petitioner's trial counsel later made a motion to dismiss on grounds that the officers who
21   searched the Tangors Way residence lacked probable cause to believe that petitioner lived there.
22   (Id. at 314-15.) At the hearing on this motion, the trial court again ruled that petitioner lacked
23   standing to challenge the search based on his denial of "possessory interest" in the Tangors Way
24   residence just prior to the search. (Reporter's Transcript ("RT") at 85-86, 93.) The trial court
25   alternatively found that even if petitioner had standing, there was sufficient evidence that
26   petitioner had a possessory interest in the house. (RT at 93-94.)

27          Petitioner asked his appellate counsel to raise a claim challenging the search of the
28   Tangors Way residence on appeal. Attached as exhibits to the petition are three letters addressed

to petitioner from his appellate counsel explaining why she chose not to raise a claim challenging the search of the Tangors Way residence. In the first letter, dated May 7, 2013, appellate counsel stated,

> As to the search issue in your case, you were on felony probation with a search clause which the police knew about. A probation search is a recognized exception to the warrant requirement. You had diminished privacy expectations when you agreed to the search terms of your probation. As a condition of your probation, you agreed to submit your person and property to a search at any time of the day or night by any law enforcement officer or probation officers with or without a warrant or probable cause. Such a search is valid provided law enforcement officers are aware of a probationer's status, the search is not motivated by either the desire to harass or for arbitrary or capricious reasons, and the search is reasonably related to the purposes of probation.
>
> There is no requirement the officers can search only a permanent residence. "Residence" is broadly construed. It could be anywhere you are staying. You could be an overnight guest or living there on an irregular basis. You had no more expectation of privacy in the safe than in the residence. It was closely associated with where you were staying at the moment.
>
> You had the burden of to establish you had standing to challenge the search. You might prevail on the standing issue that, based on the totality of the circumstances (what the officers were told, believed they would find in the house, actually found in the house), you had a relationship to the house. The problem is that you would then have to argue the trial court's finding the probation search was valid was incorrect. How could you do that? There were facts showing you had a connection to the house and you are contending you had a connection to the house by asserting you had standing to challenge the search. You'd be arguing at cross purposes. If you had standing to challenge the search then the officers had authority to search…

(ECF No. 1 at 28.)

In letters dated May 21, 2013 and June 7, 2013, appellate counsel explained again why a claim challenging the trial court's ruling that petitioner lacked standing had no merit. In the May 21, 2013 letter, appellate counsel explained,

> If I raised this issue on appeal, I would first have to argue that the trial court was wrong in holding you had no standing. If I lost on standing that would be the end of it. If I won on standing, the appellate court would go on to consider whether the probation search was valid. The appellate court has to accept the trial court's express and implied findings if there is support in the record. In other words, it has to accept that the police had a reasonable belief

> of a connection to the house. How could I argue there was no support in the record? The facts used to establish standing would provide further connection to the house. The trial court's ruling that the police had a reasonable belief of a connection to the house would be upheld.

(Id. at 30.)

In his state habeas petition, petitioner argued that his appellate counsel was ineffective for failing to claim that the police lacked probable cause to believe that he resided at the Tangors Way residence. The Sacramento County Superior Court denied this claim for the reasons stated herein:

> Petitioner also claims that appellate counsel was ineffective in failing to claim on appeal that the police lacked probable cause to believe petitioner was a resident before entering and searching the residence, because his constructive possession of a key was insufficient to establish that probable cause and the search was beyond the scope of his consent from his probation search condition. He claims that appellate counsel advised him that raising a standing argument on appeal would be at cross purposes because it would validate the search, in purported contradiction of People v. Dees (1990) 221 Cal.App.3d 598's rule that what a defendant adduces at a preliminary hearing cannot be used against him or her [at] trial. He also claims that appellate counsel stated a belief that without standing petitioner could not challenge the search at all, and that police did not need probable cause to conduct a probation search. He claims that was erroneous and amounted to ineffective assistance of appellate counsel. Petitioner claims that he tried to file a supplemental brief himself to raise these issues, but that was denied by the Third District.
>
> Petitioner attaches a May 7, 2013 letter to him from his appellate counsel explaining that he was on felony probation with a search clause that the police knew about, which is a recognized exception to the warrant requirement. Appellate counsel explained that under the clause, the officers could search anywhere that petitioner was staying, even as an overnight guest. Appellate counsel explained that petitioner would have the burden of establishing standing to challenge the search, but that if petitioner established that, he could not then argue that the probation search was invalid. Appellate counsel explained that if petitioner had standing to challenge the search, then the officers had the authority to search. Thus, if raised, petitioner could lose on whether he had standing, and even if he won on standing, he would lose on whether the probation search was justified. Appellate counsel informed petitioner that it was not an arguable issue, and that appellate counsel had no obligation to present a frivolous issue.
>
> Petitioner attaches a May 21, 2013 letter to him from his appellate counsel, again explaining to him that he consented to the search when he accepted the conditions of probation, and that if defendant

> showed standing that could be considered in determining whether police had a reasonable belief that he had a connection to the place. Appellate counsel explained that the trial court found he had no standing to challenge the probation search, and even if he did, he had a possessory interest in the house and the probation search was valid. Appellate counsel explained to petitioner that the Dees case did not help him, because Dees held only what a defendant might adduce about standing at the preliminary hearing cannot be used as an admonition of guilt at trial.
>
> Petitioner attaches a June 7, 2013 letter to him from his appellate counsel again explaining to him the standing and probation search dilemma.
>
> ****
>
> Petitioner fails to show ineffective assistance of counsel. Appellate counsel's letters to petitioner gave correct analyses of the law, that (1) to challenge a search of a residence, generally, a defendant must show standing, that is, a privacy interest in the residence (see generally Rakas v. Illinois (1978) 439 U.S. 128), and (2) even if petitioner could have shown standing to challenge the search, the search was nevertheless justified because having conceded a privacy interest in the residence and what was inside it, the search of the residence fell within the scope of petitioner's probation search condition, generally allowing police to search the residence without probable cause (see generally People v. Bravo (1987) 43 Cal.3d 600). Appellate counsel competently concluded that either way, petitioner could not win on appeal of the denial of his motion to suppress and to dismiss, because the probation search condition allowed the search even if petitioner had sufficient connection to the residence to grant him standing to bring the challenge in the first place. Petitioner does not cite any legal authority for concluding otherwise, thus fails to show that appellate counsel incompetently made a choice not to raise any such issue on the appeal (see Strickland v. Washington (1984) 466 U.S. 668). As such, the part of petitioner's claim that this court may entertain at this time is denied.

(Respondent's Lodged Document 8.)

The Superior Court, and appellate counsel, correctly analyzed the relevant Fourth Amendment law. A "person seeking to exclude evidence allegedly obtained in violation of the Fourth Amendment must have standing to challenge the illegal conduct that led to the discovery of the evidence." United States v. Pulliam, 405 F.3d 782, 786 (9th Cir. 2005). To establish standing "the defendant must establish that he or she had a 'legitimate expectation of privacy' in the place searched or in the property seized." United States v. Kovac, 795 F.2d 1509, 1510 (9th Cir. 1986), quoting Rakas v. Illinois, 439 U.S. 128, 143-44 (1978). A "person who is aggrieved

1  by an illegal search and seizure only through the introduction of damaging evidence secured by a
2  search of a third person's premises or property has not had any of his Fourth Amendment rights
3  infringed." United States v. Pulliam, supra, 405 F.3d at 785-86, quoting Rakas v. Illinois, supra
4  439 U.S. at 134.

5       As correctly found by the Superior Court and appellate counsel, if petitioner was to
6  successfully challenge the trial court's ruling that he lacked standing to challenge the search, the
7  search would still be valid because of his probation search condition.  As noted by the Superior
8  Court and appellate counsel, a showing that petitioner had standing to challenge the search would
9  also establish that petitioner had a connection to the Tangors Way residence to justify the search.

10      For the reasons discussed above, petitioner's appellate counsel was not ineffective for
11 failing to raise a claim challenging the search of the Tangors Way residence on the grounds
12 alleged.  The denial of this claim by the Superior Court was not an unreasonable application of
13 clearly established Supreme Court authority.  Accordingly, this claim is denied.

14 V. Disclosure of Identities of Confidential Informants

15     A.  Order for Further Briefing

16      Petitioner argues that the trial court erred in denying his request to disclose the identity of
17 confidential informants.  The undersigned ordered further briefing addressing this claim for the
18 reasons stated herein.

19      On February 15, 2011, petitioner was arrested for various offenses involving drug
20 possession.  (CT at 318.)  This arrest was based on information received by law enforcement from
21 two confidential informants.  (Id.)  On May 10, 2011, a search warrant was served on petitioner's
22 residence based on information received from three confidential informants.  (Id. at 318; see also
23 respondent's lodged document 1 at 4-5 (opinion of California Court of Appeal)).

24      On direct appeal, petitioner argued that the trial court erred by failing to disclose the
25 identities of the two confidential informants relied on by law enforcement when they arrested him
26 in February 2011.  (Respondent's Lodged Document 1 at 4-5.)  In the order affirming petitioner's
27 conviction, the California Court of Appeal noted that while petitioner had previously sought
28 disclosure of the three confidential informants who provided facts supporting the search warrant

1  executed in May 2011, he did not renew that issue on appeal.  (Id.)

2  In the instant petition, petitioner challenges the trial court's failure to disclose the
3  identities of the three confidential informants who provided facts supporting the search warrant
4  executed in May 2011.  (ECF No. 1 at 20-21.)  Petitioner raised this claim in his habeas petition
5  filed in the California Supreme Court.  (Respondent's Lodged Document 11 at p. 11 of points and
6  authorities.)

7  In the answer, respondent addressed the claim raised by petitioner on direct appeal, i.e.,
8  the trial court erred in failing to disclose the identities of the two confidential informants relied on
9  by law enforcement to arrest petitioner in February 2011.  Accordingly, on October 11, 2016, the
10  undersigned ordered respondent to file a supplemental answer addressing petitioner's claim
11  challenging the trial court's failure to disclose the identities of the three confidential informants
12  who provided facts supporting the search warrant executed in May 2011.  (ECF No. 22.)

13  On November 29, 2016, respondent filed a supplemental answer.  (ECF No. 26.)  On
14  December 12, 2016, petitioner filed a supplemental traverse.  (ECF No. 27.)

15  On January 26, 2017, the undersigned ordered respondent to file, under seal, the transcript
16  from the August 25, 2011 in camera hearing the trial court held regarding petitioner's motion for
17  disclosure of the identities of the three confidential informants.  (ECF No. 28.)  On March 2,
18  2017, respondent filed the transcript from this hearing, under seal.[1]  (ECF No. 32.)

19  ////

---

[1] On appeal, petitioner's appellate counsel argued that the trial court erred when it refused to disclose the identity of the "informant on whom the police relied." (Respondent's Lodged Document 2 at 16.)  Appellate counsel appeared to challenge the trial court's failure to disclose the identity of the two informants connected with petitioner's February 2011 arrest.  In support of this argument, appellate counsel cited the transcript from the August 25, 2011 in camera hearing, i.e., the same transcript filed by respondent in this court on March 2, 2017.  (Id.)  In denying this claim, the California Court of Appeal also relied on the transcript from the August 25, 2011 in camera hearing.  (Respondent's Lodged Document 1 at 4-5.)

It appears to the undersigned that the in camera hearing, held August 25, 2011, addressed petitioner's motion to disclose the identities of the three confidential informants associated with the May 2011 search of the Tangors Way residence.  In other words, it is not clear that the trial court also considered petitioner's request for disclosure of the two informants connected with his February 2011 arrest.  It appears that respondent takes the same position.  For these reasons, the undersigned has reviewed the transcript from this hearing when evaluating the pending claim.

11

B. Legal Standard

In Roviaro v. United States, 353 U.S. 53, 59 (1957), the Supreme Court held that the government has a privilege of withholding an informer's identity. "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement." Id. However, "the privilege must give way" when "the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Id. at 60-61. The "public interest in protecting the flow of information" must be balanced against "the individual's right to prepare his defense." Id. at 62. The balancing test depends "on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Id.[2]

Ordinarily, an in camera review of the confidential information adequately protects an accused's right to a fair trial. See Pennsylvania v. Ritchie, 480 U.S. 39, 60 (1987) (holding that a defendant's "interest in ensuring a fair trial can be protected fully by requiring that the [confidential information] be submitted only to the trial court for in camera review").

C. Background to Claim

On July 20, 2011, petitioner's trial counsel filed a motion for disclosure of the three confidential informants who provided facts supporting the search warrant executed in May 2011. (CT at 317.) In this motion, counsel acknowledged that petitioner was arrested in February 2011 after his residence was searched. (Id.) Therefore, petitioner was in custody in May 2011. Trial counsel stated that after the May 2011 search, Jessica Heffetrager stated that she, Megan Haas and petitioner lived there. (Id.)

In the July 2011 motion, trial counsel stated that in March 2011, Detective Heffner received information from Confidential Informant No. 1 that "the subjects" of the Tangors Way residence and Haas were selling heroin. (Id.) Trial counsel also stated that in April 2011, Detective Heffner received information from Confidential Informant No. 2 that "the subjects" of

---

[2] In the supplemental answer, respondent argues that Roviaro is not clearly established law. The undersigned disagrees. See Airy v. Chappell, 2014 WL 1266153 at *5 (N.D. Cal. 2014).

12

the Tangors Way residence, including Zachary Dennis, were selling heroin.  (Id.)  Trial counsel stated that in May 2011, Detective Heffer received information from Confidential Informant No. 3 that "the subjects" of the Tangors Way residence were selling methadone.  (Id. at 319.)

In the July 2011 motion, trial counsel stated that in May 2011, the California Highway Patrol served a search warrant on the Tangors Way residence and found various illegal drugs.  (Id.)  As a result of the search, Heffentrager, Dennis and Haas were charged with various offenses.  (Id.)

In the July 2011 motion, trial counsel asked for the names and locations of the three confidential informants who told Detective Heffner that Dennis, Haas and "the subjects" of the Tangors Way residence were selling drugs.  (Id.)  Trial counsel argued that information that people other than petitioner were selling drugs at the Tangors Way residence was relevant to petitioner's defense.  (Id. at 320.)  Trial counsel argued that evidence that people other than petitioner were selling drugs at the residence exonerated petitioner.  (Id. at 321.)  Counsel argued,

> Did the "information" Heffner received about [petitioner] come from one of his three "confidential informants" who told him people other than [petitioner] were selling drugs at Tangers?  Did the "information" include allegations about the residents of 7924 Tangers?  Only Heffner knows.
>
> But we know that Heffner's three informants leveled their fingers at people other than [petitioner], which is material to [petitioner's] guilt or innocence.

(Id.)

On August 25, 2011, a hearing was held regarding petitioner's motion to disclose the identity of the three confidential informants.  (RT at 30.)  After the in camera hearing, the trial court found that disclosure of the identities of the three informants would not result in evidence with respect to petitioner's exoneration.  (Id. at 55.)  As noted by the California Court of Appeal, the three informants involved with the May 2011 search warrant were different from the two informants involved with the February 2011 warrant.  (Respondent's Lodged Document 1 at 5.)

D. Analysis

The undersigned has reviewed the transcript from the in camera hearing filed, under seal, on March 2, 2017.  (ECF No. 32.)  Taking into account petitioner's arguments regarding why

13

disclosure of the three confidential informants could lead to information relevant to his defense, the undersigned concurs with the trial court that disclosure of the identities of the three confidential informants would not lead to testimony or other evidence that would be "material and favorable" to petitioner's defense.  See United States v. Gonzalo Beltran, 915 F.2d 487, 489-90 (9th Cir. 1990) (per curiam) (where disclosure would not lead to testimony or other evidence that would be "material and favorable" to the defense, disclosure is not required.)  Accordingly, the trial court did not err in denying petitioner's motion for disclosure of the identities of these three confidential informants.  Therefore, the denial of this claim by the California Supreme Court was not an unreasonable application of clearly established Supreme Court authority.  This claim is denied.

VI. Alleged Denial of Right To Present Evidence of Third Party Culpability

Petitioner argues that the trial court improperly denied his request to present evidence of third party culpability.  The California Court of Appeal, the last state court to issue a reasoned decision addressing this claim, denied this claim for the reasons stated herein:

> In a pretrial motion in limine, defendant sought the introduction of evidence adduced in connection with the execution of search warrants at the Tangors Way home in May and September 2011, detailing the illicit transactions of other people (including defendant's wife) who had resided there in February 2011 and involving many of the same clients with whom the prosecution sought to connect him. [Footnote 2.] He contended that this would somehow demonstrate that only these other individuals were involved in the sale of contraband from the residence. The prosecutor pointed out that evidence of joint control at the time of the February 2011 search was certainly more probative on the issue than evidence in later searches after defendant was in custody, and "certainly counsel with regards to the February 15th evidence can raise that third-party culpability argument as to one or more of those other people, and we will have to deal with that." The trial court agreed. "But the fact that everybody involved in that house is involved in drugs, frankly, I don't think it has any probative effect [that exculpates defendant], and, in fact, it may be the opposite, that ... the people who ... are associated with that house are drug people." It concluded "the probative value of this has almost no weight whatsoever.... [¶] So I am going to rule that the May and September searches may not ... be presented through testimony other than [directly from] those [third party] people" (who would likely decline in any event to testify on self-incrimination grounds).
>
> We do not need to belabor the analysis of this issue. In order to be admissible, evidence of third party culpability must directly or

> circumstantially connect the third parties with the commission of the charged crimes (as opposed to evidence of mere motive or opportunity), which is concededly present here. (People v. McWhorter (2009) 47 Cal.4th 318, 367–368.) However, the evidence must be capable of establishing a reasonable doubt of a defendant's guilt, and be more probative than prejudicial. (Id. at p. 368.) As with evidentiary rulings in general, this is a matter for the trial court's discretion, which does not violate a defendant's right to present a defense if the evidence is of marginal probative value. (People v. Hall (1986) 41 Cal.3d 826, 834–835; see People v. Smithey (1999) 20 Cal.4th 936, 996 [noting exception of due process violation where "highly probative" evidence of innocence excluded]; People v. Fudge (1994) 7 Cal.4th 1075, 1102–1103 [due process not violated unless defense completely excluded; exclusion of only "some evidence" at worst an "error of law"].)
>
> As the trial court correctly concluded, the strongest evidence of third party guilt would be the indicia of control present at the time of defendant's arrest in February. Even the February third party evidence itself does not foreclose defendant's guilt (Hambarian, supra, 31 Cal.App.3d at pp. 659, 661), though it allowed him to make an argument to that effect. As a result, the evidence connected with subsequent searches is at best cumulative and corroborative, with only a minor subsidiary probative value that does not warrant any time consumed in presenting it. Defendant's description of it as "dynamite evidence" does not make it so. We therefore do not find that the trial court abused its discretion, or that excluding the evidence had the result of violating defendant's right to due process.
>
> > [Footnote 2:  We do not need to specify the evidence beyond this general categorization.]

(Respondent's Lodged Document 1 at 7-8.)

In Holmes v. South Carolina, 547 U.S. 319 (2006), the U.S. Supreme Court reversed and remanded a decision of the South Carolina Supreme Court. The South Carolina court held that a trial court could exclude all evidence tending to show commission of the crime by another person "where there is strong evidence of [a defendant's] guilt, especially where there is strong forensic evidence, the proffered evidence about a third party's alleged guilt may (or perhaps must be) excluded." 547 U.S. at 329 (internal quotes omitted). The U.S. Supreme Court held that state courts cannot determine the admissibility of third-party culpability evidence by weighing the evidence supporting the accused's guilt. In doing so, it "did not depart from the rule that state lawmakers have broad latitude in establishing rules of evidence so long as they do not infringe upon a weighty interest of the accused and are [neither] arbitrary [n]or disproportionate to the

1  purposes they are intended to serve." Duvardo v. Giurbino, 649 F.Supp.2d 980, 1007 (N.D. Cal. 2009).

The Holmes Court began its analysis by citing legal encyclopedias to recall the basic evidentiary rules concerning admission of third-party culpability evidence:

> Evidence tending to show the commission by another person of the crime charged may be introduced by [the] accused when it is inconsistent with, and raises a reasonable doubt of, his own guilt; but frequently matters offered in evidence for this purpose are so remote and lack such connection with the crime that they are excluded.

Holmes, 547 U.S. at 327 (quoting 41 C.J.S., Homicide § 216 at 56-58 (1999)).

> The accused may introduce any legal evidence tending to prove that another person may have committed the crime with which the defendant is charged ... [Such evidence] may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial.

Holmes, 547 U.S. at 327 (quoting 40A Am.Jur.2d, Homicide § 286 at 136-38 (1999)).

At the outset, the undersigned clarifies that in the motion in limine, petitioner's counsel asked for admission of evidence from the May 2011 searches of the Tangors Way residence. (CT at 501.) In the opposition to this motion, the prosecution argued that evidence from the May 2011 search of the Tangors Way residence and the September 27, 2011 arrest of Meghan Haas was not relevant and should be excluded. (Id. at 523.) Therefore, the California Court of Appeal's reference to evidence from the September 2011 search warrant apparently refers to evidence obtained following Haas's arrest.

In the instant case, the California Court of Appeal was not objectively unreasonable in rejecting petitioner's claim that the trial court violated his constitutional rights by prohibiting him from introducing evidence of third party culpability based on evidence adduced from the May and September 2011 searches of the Tangors Way residence. The California Court of Appeal reasonably found that evidence adduced from the May and September 2011 searches had "minor subsidiary probative value." More relevant was evidence regarding the other people living at the Tangors Way residence in February 2011. As noted in the factual summary, petitioner's trial

counsel argued that those people were more likely to have been selling drugs rather than petitioner. Because evidence adduced from the later searches had low probative value, the trial court's decision to exclude it did not violate petitioner's constitutional right to present a defense.

Even if the trial court erred in excluding the third-party culpability evidence, the error did not have a "substantial and injurious effect" on the verdict. See Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993). The evidence against petitioner was strong. As noted by the California Court of Appeal, at the time of his arrest, petitioner had a key to the front door of the Tangors Way residence and to a safe found in the master bedroom. A large amount of cash, guns, ammunition and controlled substances were found in the safe. Petitioner's fingerprints were found on two containers. A bail receipt and a passport with petitioner's name were also found in the safe.

Considering the strong evidence linking petitioner to the drugs found in the safe, it is very unlikely that the outcome of the trial would have been different had the jury heard evidence that three and seven months after petitioner's arrest, other people living in the Tangors Way residence were arrested for selling drugs. The exclusion of this evidence did not have a substantial and injurious effect on the verdict.

Because the denial of this claim by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority, this claim is denied.

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's application for a writ of habeas corpus is denied;

2. A certificate of appealability is not issued.

Dated: March 16, 2017

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Darosa.157

17